**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **VENCE THOMPSON,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 4:06-CV-082-Y** |
| **NATHANIEL QUARTERMAN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the

provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for

the Northern District of Texas.  The Findings, Conclusions, and Recommendation of the United

States Magistrate Judge are as follows:

## I.  FINDINGS AND CONCLUSIONS

### A.  NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

### B.  PARTIES

Petitioner Vence Thompson, TDCJ-ID #1101294, is in custody of the Texas Department of

Criminal Justice, Correctional Institutions Division, in Dalhart, Texas.

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal

Justice, Correctional Institutions Division.

### C.  FACTUAL AND PROCEDURAL HISTORY

In 1998, Thompson was charged by indictment in Case No. 0717657D in the 396th District

Court of Tarrant County, Texas, with one count of aggravated sexual assault of T.B. (containing two paragraphs alleging the same offense by a different method) and one count of indecency with T.B., a child younger than fourteen years of age. (State Habeas R. at 121.) Thompson waived a jury trial, and his bench trial commenced on February 6, 2002.

At trial, T.B. testified that in early 1998, when she was twelve years old, Thompson lived in an apartment with her, her mother, and her two brothers. (2Rep. R. at 60.) One night Thompson entered her bedroom and fondled her breast and told her that he would make a woman out of her and wanted to be her first. (*Id*. at 61-65.) The sexual contact escalated and occurred up to three times a week, typically in the living room, for months. (*Id.* at 67-77.) On one occasion, Thompson took T.B. to a motel room, turned the TV to a pornographic station, and attempted to have sexual intercourse with her. (*Id.* at 80-89.) T.B. fought Thompson, cried, and screamed. (*Id.* at 88-91.) After that incident, Thompson continued to abuse T.B. but less frequently. (*Id*. at 91-91.) Thompson threatened T.B. that if she told anyone, a lot of people would get hurt. (*Id.* at 77.) Thompson and T.B.'s mother were married in April 1998, and the abuse stopped. (*Id.* at 92, 175.) During a brief separation between the two later that year, T.B., her mother, and her brothers stayed at the Salvation Army. (*Id.* at 16.) When her mother informed T.B. that she was going back to Thompson, T.B. informed her mother of the abuse. (*Id.* at 182) T.B.'s mother discussed the allegations with Nanette Serrano, a case worker at the shelter, but did not report the allegations to the authorities. (*Id.* at 177, 194.) Serrano testified that she talked with T.B. and her mother and eventually notified the proper authorities. (*Id.* at 18, 22.) T.B.'s mother testified that she did not believe, then or at the time of trial, that T.B. had been sexually abused by Thompson. (*Id.* at 193-94, 202.) T.B.'s sexual assault exam was normal. (*Id.* at 113.) Thompson did not testify at trial. (*Id*.

2

at 172.)

Based on the testimony and other evidence adduced at trial, the trial court found Thompson guilty of aggravated sexual assault of a child by contact (paragraph two of count one) and indecency with a child by contact (count two) and assessed his punishment at twenty-five years' and twenty years' imprisonment, respectively.  (State Habeas R. at 123.)  The court found Thompson not guilty of aggravated sexual assault by penile penetration (paragraph one of count one).   Thompson appealed his convictions, challenging only the factual sufficiency of the evidence, however, the Second Court of Appeals affirmed the trial court's judgment on April 17, 2003.  *Thompson v. Texas*, No. 2-02-171-CR, slip op. (Tex. App.–Fort Worth Apr. 17, 2003) (not designated for publication). Thompson did not file a petition for discretionary review in the Texas Court of Criminal Appeals. (Petition at 3.)          On February 25, 2004, Thompson filed a state application for writ of habeas corpus raising the issues presented herein, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court *Ex parte Thompson*, No. 58,463-01, Supp. Transcript, at cover.  He filed this federal petition for writ of habeas corpus on January 24, 2006.  *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998) (holding pro se habeas petition filed when papers delivered to prison authorities for mailing).  Quarterman has filed an answer with supporting documentary exhibits, to which Thompson has filed a reply.

D.  ISSUES

In eleven grounds, Thompson raises the following claims:

(1)     The state withheld favorable evidence (grounds one, five and six);

(2)     He was subjected to double jeopardy (ground two);

(3)     The evidence was legally insufficient to support his convictions because there was a fatal variance between the indictment and the proof (ground

3

three);

(4)     He received ineffective assistance of trial and appellate counsel (grounds four and eleven);

(5)     His rights to confront and cross-examine witnesses were violated (grounds seven and eight);

(6)     The state knowing used perjured testimony (ground nine); and

(7)     The trial court erred by refusing to require the state to make an election of counts (ground ten.)  (Petition at 7-8; Amendment to Petition at 2-5.)

### E.  Rule 5 Statement

Quarterman believes that Thompson has sufficiently exhausted his state remedies on the issues presented, except for claim three, enumerated above, in part.   Specifically, he contends Thompson's claim that the evidence was legally insufficient was not properly exhausted in the state courts and is barred from federal review.  (Resp't Answer at 4.)

Review of the state court records indicates that, on appeal, Thompson challenged only the factual sufficiency of the evidence.   Under Texas law, legal sufficiency of the evidence may be raised on direct appeal, but is not cognizable on collateral review.  *Clark v. Texas* 788 F.2d 309, 310 (5th Cir. 1986). Thus, in order to exhaust a claim of legal insufficiency, Thompson was required to raise the claim in a petition for discretionary review (PDR), which he did not do.  *Richardson v. Procunier*, 762 F.2d 429, 429 (5th Cir. 1985).   Thompson is now barred under state law from asserting the claim in state court.   This procedural default in state court is an adequate state procedural ground barring federal habeas review.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801- 07 (1991).  Thompson has moved to strike his third claim from his original petition for failure to exhaust.  (Pet'r Reply at 3.)

F. DISCUSSION

1.  Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. § 2254(d).  A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case.  *Williams*, 529 U.S. at 407-08.

Further, federal courts give great deference to a state court's factual findings.  *Hill*, 210 F.3d at 485.  Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct.  This presumption of correctness applies to both explicit findings of fact and those findings of fact implicit in the state court's mixed law and fact conclusions.  *Valdez v. Cockrell*, 274, F.3d 941, 948 (5th Cir. 2001).  The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without

written order, as the court did here, it is an adjudication on the merits, which is entitled to this presumption. *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### 2. *Brady* Claims

Thompson claims that, although requested, the state withheld the police report and the CPS files. (Petition at 7.) Federal due process requires the prosecution to disclose material, exculpatory information to an accused. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Such non-disclosure is violative of due process if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985).

The state habeas judge, who was also the trial court judge, conducted a hearing by affidavit on this issue and entered findings refuting Thompson's claim. (State Habeas Supp. Transcript at 10, 15.) The state court found that, pursuant to the state's open-file policy, counsel was allowed to review and copy any and all relevant records and reports, including the police report. (*Id.*) This finding is presumed to be correct absent clear and convincing evidence in rebuttal, such showing not having been made by Thompson. 28 U.S.C. § 2254(e)(1). The court also found that the state's file contained no evidence of CPS records or evidence that the state was aware of the existence of such records. (*Id.*) These findings on the issue are presumed to be correct absent clear and convincing evidence in rebuttal, such showing not having been made by Thompson. 28 U.S.C. § 2254(e)(1). Furthermore, Thompson conceded in his state habeas application that it is impossible to know whether the CPS report would have been beneficial to his defense. (State Habeas R. at 30.) The mere possibility that an item of undisclosed information might have helped the defense, or might

6

have affected the outcome of the trial, does not establish materiality required to support a *Brady* claim. *United States v. Agurs*, 427 U.S. 97, 109-110 (1976); *Graves v. Cockrell*, 351 F.3d 143, 154 (5th Cir. 2003).

Thompson also claims the state withheld evidence that Nanette Serrano, the Salvation Army caseworker, was sexually abused. (Amendment to Petition at 2; State Habeas R. at 92.) In support of this assertion, Thompson provided the affidavit of T.B.'s mother Regina Thompson, in which she states that Serrano told her she had also been sexually abused. (*Id.*) Thompson claims that, had he and his counsel been aware of this fact, the defense could have used it to show possible bias and prejudice on the part of Serrano to fabricate her testimony. (Amendment to Petition at 2.) Nothing in the record reflects that the prosecution was aware of this information. Further, as previously noted, the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality required to support a *Brady* claim. *Agurs*, 427 U.S. at 109-110; *Graves*, 351 F.3d at 154.

### 3. Double Jeopardy Claims

Thompson claims that, because the indictment references March 1, 1998, for both counts, he was convicted of two offenses arising out of the same occurrence, in which the proof necessary to establish one offense was the predicate for the other offense, in violation of the double jeopardy clause. (Petition at 7; State Habeas R. at 58-64.)

The double jeopardy clause protects against multiple prosecutions and punishments for the same offense. *Monge v. California*, 524 U.S. 721, 727 (1998). The test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Texas courts

have applied the *Blockburger* test to cases raising double jeopardy challenges to child indecency and sexual assault convictions by asking whether the evidence demonstrates separate and distinct acts. *See Murray v. Texas*, 24 S.W.3d 881, 888-89 (Tex. App.–Waco 2000, pet. ref'd); *Hutchins v. Texas*, 992 S.W.2d 629, 633 (Tex. App.–Austin 1999, pet. ref'd, untimely filed); *Quinn v. Texas*, 991 S.W.2d 52, 54-55 (Tex. App.–Fort Worth 1998, pet. ref'd); *cf. Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998) (holding state not entitled to seek convictions for two offenses when child did not testify that defendant had touched her more than once). Further, the "on or about" language in the indictment allows the state to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment or return of the indictment and within the statutory limitations period. *See Sledge v. Texas*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997); *Scoggan v. State*, 799 S.W.2d 679, 680 n. 3 (Tex. Crim. App. 1990). When an indictment alleges that some relevant event transpired "on or about" a particular date, the accused is put on notice to prepare for proof that the event happened at any time within the statutory limitation period. *Garcia v. Texas*, 981 S.W.2d 683, 685-86 (Tex. Crim. App. 1998) (purpose of specifying date is to show that the prosecution is not barred by statute of limitations); *Thomas v. Texas*, 753 S .W.2d 688, 692 (Tex. Crim. App. 1988); *Ferrell v. Texas*, 968 S.W.2d 471, 473 (Tex. App.–Fort Worth 1998, pet. ref'd) (involving allegations of aggravated sexual assault of a child and indecency with a child).

The evidence in this case demonstrates that Thompson touched T.B.'s breasts on more than one occasion, rubbed oil on her or had her rub oil on her breasts and body while he masturbated on more than one occasion, and caused his penis to touch T.B.'s vagina on at least one occasion. Thus, there was evidence that Thompson engaged in separate and distinct acts of contact, touching and exposure. *See Hutchins*, 992 S.W.2d at 633. In these circumstances, it was permissible for purposes

of double jeopardy to try Thompson on more than one count and separately sentence him on each

count.  *See Williams v. Quarterman*, No. A-06-CV-118-LY, 2006 WL 2563950, at *5-6 (W.D. Tex.

Aug. 31, 2006) (not designated for publication).

### 4.  Ineffective Assistance of Counsel

Thompson claims he received ineffective assistance of trial and appellate counsel.  The same

attorney represented Thompson at trial and on appeal.  Thompson contends counsel was ineffective

at trial by failing to (1) make an adequate and independent investigation of the facts material to his

case and obtain and review the CPS files and the police report, (2) object to erroneous evidence in

the PSI report, (3) challenge alleged extraneous offenses contained in the PSI, and (4) to have a

command of the facts and law relevant to his best defense.  (Petition at 8.)  Thompson contends

counsel was ineffective on appeal by not raising his ineffective assistance of counsel claims.

(Amendment to Petition at 5.)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial

and on a first appeal as of right.  U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95

(1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738,

744 (1967).  An ineffective assistance claim is governed by the standards set forth in *Strickland v.

Washington*.  466 U.S. at 668.  *See also Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001)

(applying the *Strickland* standard to ineffective assistance claims against appellate counsel).  To

establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell

below an objective standard of reasonableness, and (2) that but for counsel's deficient performance

the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 688.

In applying this standard, a court must indulge a strong presumption that counsel's conduct

fell within the wide range of reasonable professional assistance or sound trial strategy.  *Id*. at 668,

688-89.  Judicial scrutiny of counsel's performance must be highly deferential and every effort must

be made to eliminate the distorting effects of hindsight.  *Id.* at 689.  Where, as here, a petitioner's

ineffective assistance claims have been reviewed on their merits and denied by the state courts,

federal habeas relief will be granted only if the petitioner demonstrates that the state courts'

application of *Strickland* was objectively unreasonable.  *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003);

*Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Santellan v. Dretke*, 271 F.3d 190, 198 (5th Cir. 2001).

The state habeas judge also conducted a hearing by affidavit on this issue and entered

findings refuting Thompson's ineffective assistance claims.  (State Habeas R., Supp. Transcript, at

14-16.)  This court must afford the state court's factual findings the presumption of correctness

unless rebutted by clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *Galvan*

*v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002).  Thompson has failed to meet this burden.  He

generally refers to the state habeas court's findings but asserts the findings fall short because they

do not address all his claims of deficient representation.  (Pet'r Reply at 8-9.)  Thompson's assertion

fails to rebut the presumptive correctness of the state court's findings.  Thus, assuming the state

court's factual findings to be correct, and having independently reviewed the state court records,

including counsel's affidavit, the state courts' adjudication of Thompson's ineffective assistance

claims was neither erroneous nor objectively unreasonable.

An attorney must engage in a reasonable amount of pretrial investigation.  *See United States*

*v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).  Counsel avers in his affidavit that all facts of the case

were independently investigated by him and the court-appointed investigator, that he reviewed and

copied all nonwork product material and reports in the state's file and interviewed witnesses, that

10

he was properly prepared for trial, that he put on a stringent defense, and that all appellate issues were raised and presented to the court of appeals.  (State Habeas Supp. Transcript at 10-11.)

The record supports counsel's averments.  Counsel filed pretrial motions, was well-versed in the facts and law of the case, made relevant objections, effectively cross-examined the state's witnesses, and gave closing argument.  Even if Thompson could show deficient performance, he presents no evidence sufficient to demonstrate that but for counsel's deficient representation, he would not have been found guilty or that his sentences would have been significantly less harsh given the evidence.  *See Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993).  Further, under Texas law, a postconviction habeas application, and not direct appeal, is generally the appropriate vehicle for bringing forth an ineffective assistance claim.  *See Robinson v. Texas*, 16 S.W.3d 808, 810-11 (Tex. Crim. App. 2000); *Thompson v. Texas*, 9 S.W.3d 808, 813-14 n.5-6 (Tex. Crim. App. 1999).  Prejudice does not result from appellate counsel's failure to assert a meritless claim or a meritless argument.  *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).

Finally, the choice by counsel to rely upon a certain line of defense to the exclusion of others is largely a strategic or tactical choice.  *See generally Profitt v. Waldron*, 831 F.2d 1245,1248-49 (5th Cir. 1987).  In the absence of evidence in the record concerning trial counsel's reasons for pursuing a particular line of defense, or that a different defense would have been both tenable and a better alternative to the defense presented at trial, we presume that Thompson's counsel made an informed and conscious strategic decision to pursue the defense that he did.  *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983).  Thompson has not shown that counsel's decision was so ill chosen that it permeated the entire trial with obvious unfairness.  *Id.*

11

### 5. Confrontation and Cross-Examination of Witnesses

Thompson claims the trial court abused its discretion by denying him an opportunity to confront a witness at a hearing held outside his presence or the presence of his attorney. (Amendment to Petition at 3.)  More specifically, Thompson contends that on July 12, 2001, following his bond hearing, his wife Regina Thompson was advised to remain in the courtroom, was sworn in by the judge, and ordered to re-appear with T.B. for trial.  (State Habeas R. at 38-39, 90-92.)  Thompson contends it was prejudicial to him because he was deprived of the right to question his wife regarding whether she wanted to appear for trial or not and influenced her to appear as a witness against her wishes.  (*Id.*)  Thompson also claims his constitutional rights were violated because he was prevented from effectively cross-examining Nanette Serrano at trial about her past sexual abuse history to show bias and prejudice against him.  (Amendment to Petition at 3; State Habeas R. at 44-49.)

A criminal defendant states a violation of the confrontation clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose the factfinder to facts from which the factfinder could appropriately draw inferences relating to the reliability of the witness.  *See Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986).  The right to confront a witness arises only when that witness inculpates a defendant. *See Chambers v. Mississippi*, 410 U.S. 284, 297-98 (1973); *United States v. Sacco*, 563 F.2d 552, 556 (2nd Cir. 1977).  Nothing in the record suggests that during the July 12, 2000 hearing Regina Thompson gave testimony inculpating Thompson in any way.  *See United States v. Daly*, 756 F.2d 1076, 1081 (5th Cir. 1985).

Further, the confrontation clause only protects a defendant's trial rights, and does not

compel the pretrial production of information that might be useful in preparing for trial. *Pennsylvania v. Ritchie*, 480 U.S. 39, 51-54 (1987). The right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination. *See California v. Green*, 399 U.S. 149, 157 (1970) ("[I]t is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause"); *Barber v. Page*, 390 U.S. 719, 725 (1968) ("The right to confrontation is basically a trial right"). The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses. *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). At trial, Thompson was able to cross-examine Serrano without limitation.

### 6. Perjured Testimony

Thompson claims the prosecution used the perjured testimony, or failed to correct such testimony, of T.B., Serrano, and Officer Criado at trial to secure a conviction. (Amendment to Petition at 4; State Habeas R. at 49-58.)

Constitutional due process forbids the state knowingly to use, or fail to correct, perjured testimony. *See Giglio v. United States*, 405 U.S. 150, 153 (1972); *Hafdahl v. Johnson*, 251 F.3d 528, 532-33 (5th Cir. 2001). To prove that the state has denied him due process of law by relying on perjured testimony, Thompson must prove that (1) a witness testified falsely; (2) the state knew the testimony was false; and (3) the testimony was material. *See Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000). Thompson has not met this burden. He asserts the state's witnesses lied and fabricated testimony, however his assertions are unsupported by fact or regard alleged

13

inconsistencies or contradictions in witness testimony, which are matters for the factfinder to resolve. *See Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982). A petitioner's unsubstantiated allegations cannot be considered to be of probative evidentiary value. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (providing that, absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value).

### 7. Election

Thompson claims the trial court erred by refusing to require the state to make an election as to which act it was relying upon for conviction. (Amendment to Petition at 4; State Habeas R. at 64-67.) Under Texas law, two or more offenses of this nature may be joined in a single indictment with each offense stated in a separate count, and a count may contain as many separate paragraphs charging the same offense as necessary. *See* TEX. CODE CRIM. PRO. ANN. ART. 21.24(a)-(b) (Vernon 1989). Thompson fails to cite to authority, and none is found, that the state law is contrary to Supreme Court law on the issue.

### 8. Summary

Thompson's claim (3) is voluntarily waived. As to the remainder of his claims, Thompson has failed to demonstrate that the state courts' determination of the claims is contrary to or involves an unreasonable application of federal law or appears based on an unreasonable determination of the facts in light of the record as a whole. Thus, the state courts' adjudication of the claims is entitled to deference and the presumption of correctness.

## II.  RECOMMENDATION

Thompson's petition for writ of habeas corpus should be denied.

## III.  NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document.  The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until February 9, 2007.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(B)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual finding or legal conclusion accepted by the United States District Judge.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

## IV.  ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until February 9, 2007, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further ORDERED that if objections are filed and the

15

opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED January 19, 2007.


_____/s/  Charles Bleil_____
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE

16